LAW OFFICE OF

# JOHN F. CARMAN

666 OLD COUNTRY ROAD
SUITE 501
GARDEN CITY, NEW YORK 11530-2004

JAMES E. NEUMAN
KAREN KERR
*Of Counsel*

(516) 683-3600
TELECOPIER

(516) 683-8410

August 27, 2012

**VIA ECF**

Honorable Denise L. Cote
United States District Judge
500 Pearl Street
New York, NY 10007

     Re: *United States v. Shaleza Aziz*
       *11CR 928*

Dear Judge Cote:

   Please accept this memorandum submitted on behalf of my client, Shaleza

Aziz, in anticipation of sentencing, which is scheduled for September 12, 2012 at 2 p.m.

## I.  INTRODUCTION

   On April 9, 2012, Shaleza Aziz appeared before the Honorable James C. Francis

and entered a guilty plea to the first count of the indictment, Conspiracy to Commit Mail

Fraud and Wire Fraud (18 USC 1349), a class C felony. The plea was entered pursuant to

an agreement with the government which contained a guideline estimate yielding a

sentencing range of 63 to 78 months.  The United States Probation Office submitted a

presentence report that included an analysis that also resulted in an advisory guideline

level of 26 (PSR at ¶ 7).  It is agreed that the offense involved no violence and the

defendant has no criminal history.

1

## II.  PERSONAL CHARACTERISTICS

### Family/Education/Employment

Shaleza Aziz is thirty-one years of age having been born on February 28, 1981 in Guyana. She has never been married and has no children. Shaleza came to the United States with her parents in 1991 and was naturalized in 2002. Since her arrest, she has resided with her parents and her sister in Schenectady, New York.

Shaleza describes herself as "not a good student" and her educational history is reflective of a lack of academic accomplishment. Although she did manage to graduate from high school, she did not advance her education in any meaningful way thereafter.

In 2001, her father moved the family to Florida in order to take advantage of an employment opportunity. The move did not work out as planned and, within a short time, her parents and sister returned to New York. Shaleza had obtained employment at a travel agency in Kissimmee operated under the name "Travelcomm." She had also established new friendships in Florida and resisted her parents' entreaties to return with them to New York.

Shaleza remained in Florida and continued to work at Travelcomm which was a legitimate, if not terribly successful, business. Shaleza was trained in telephone sales and developed a facility for the simple pitch that was used by the company to sell their product. She earned a modest income and, over time, became comfortable conducting sales over the phone.

It was at Travelcomm where she met Hernan Hurtado and in 2009, made the regrettable decision to work with him in his "time-share reselling business." It should be

2

noted that at the time Ms. Aziz made the decision to leave Travelcomm, she was in the early stages of a romantic relationship with Mr. Hurtado.

## III.   OFFENSE CONDUCT

The probation report accurately describes both the nature of Mr. Hurtado's company and the role that Ms. Aziz played in it.  The duration of her employment with Travelcomm was virtually identical to the duration of her romantic relationship with Mr. Hurtado.  And while Ms. Aziz was in no way responsible for designing or implementing Mr. Hurtado's  version of what is apparently a common scheme in Florida, she accepted a role as a telephone sales person, selling a service that would never be provided.  Although her initial impressions where that the company would "market" the timeshares for sale, as well as, find actual buyers, the truth of what was occurring was soon evident to Ms. Aziz. She continued, nevertheless, and was compensated for her efforts on a commission basis. She did not, however, garner any share of the commissions earned by others.

As the relationship with Mr. Hurtado faded, Ms. Aziz left the company and returned to New York.  Once in New York, needing money, she engaged in a series of exchanges with one of her former "customers" and in so doing, victimized a person who was vulnerable to the scheme of which she had been apart.  While we are not able to reconstruct the actual amount of money that she received as a result of her conduct, we do not contest the figures in the Probation Report relating to this issue.

At the time of her plea, Ms. Aziz accepted responsibility for joining the conspiracy and for committing acts in furtherance of its goals.

3

## IV.   GUIDELINE CALCULATION

I have reviewed the Probation Report with Ms. Aziz and have discussed with her the Federal Sentencing Guidelines in great detail.  We do not contest the Probation Departments guideline calculation which recommends an advisory range at an Adjusted Offense Level of 26 (63-78).

## V.   SENTENCING PURSUANT TO 18 USC 3553(a)

At the outset, 18 U.S.C. 3553 requires that the "court shall impose a sentence sufficient, but not greater than necessary to comply with the purposes set forth in paragraph (2) of this subsection."  In order to meet its obligation, the Court must consider various factors:

### §3553 (1)   Nature and Circumstances of the Offense and History and Characteristics of the Defendant

*THE OFFENSE*

The nature and circumstances of the offense are set forth accurately and in great detail in the Pre-Sentence Report and above in this memorandum.  There are just a few additional details that are appropriate to mention here.   On the negative side, the offense conduct did not involve an isolated incident and extended over a period in excess of one year.  The is no question that Ms. Aziz knowingly and willingly participated in a business that had no legitimate purpose and that, as a result of her participation, the scheme was made more successful.

4

Alternatively, Shaleza was essentially a typical "boiler room" telemarketer who was assigned to perform a basic unsophisticated function. Although she was romantically involved with Hurtado, there is no basis for the conclusion that she played a greater role in the execution of the scheme. Furthermore, the offense, as deplorable as it was, did not involve violence or result in physical injury to anyone.

*HISTORY AND CHARACTERISTICS*

Apart from this deviation, Shaleza Aziz has lead a responsible and law-abiding life. Until her involvement with Mr. Hurtado and his companies, she had never been arrested.

**18 USC §3553 (2)**         **(A)   The Need for the Sentence Imposed
To Reflect the Seriousness of the Offense**

Ms. Aziz recognizes that her conduct occasioned greater hardship upon time-share owners who were already struggling under the burden of investments that had diminished in value. By promising to "resell" the timeshares, she and the others not only took their money, they provided false hope. With limited future earning potential, Ms. Aziz is aware of her inherent inability to right the wrong she has committed.

Ms. Aziz is aware of the sentences that this Court has imposed in connection with co-defendants and entered her plea knowing that it would result in a period of incarceration. While a prison sentence is the most severe form of punishment available in our system of justice, obviously the "length" of the sentence further defines the level of severity. In this case, where the defendant is thirty-one years of age and unmarried, it is important to observe that whatever period of incarceration the Court might impose will constitute a significant percentage of her remaining child-baring years. Ms. Aziz still

5

holds on to the hope that one day she will be fortunate enough to have children.

**(C) To Protect the Public From Further Crimes of the Defendant**

Shaleza Aziz had no previous contact with the criminal justice system, had no disciplinary issues as a child and, as described in the enclosed testimonials, has lived a life wholly inconsistent with her participation in this offense.  It appears safe to conclude that Ms. Aziz has demonstrated her remorse by accepting responsibility for her wrongdoing and, given the prison sentence she is bound to serve, is unlikely to endanger the public in the future.

**(D) To Provide the Defendant with Training**

A sentencing condition that requires Ms. Aziz to pursue vocational training upon release would seem to be appropriate.

**VI.  ADDITIONAL OBSERVATIONS**

During the course of my representation, up to and including the writing of this memorandum, I have struggled to understand how it was that Ms. Aziz came to the point of being involved in this offense.  In most cases, the motivations are easy to see and where the defendant strayed from the path is easy to follow.

I have met her parents, who present as serious, religious and law-abiding people who work hard to earn a modest living.  They seem deeply concerned about their daughter to the point of being overwrought.  Although her arrest has clearly given rise to considerable (and understandable) tension in the house, they have both expressed the willingness to "go to jail instead of her."

Shaleza is an absolutely delightful person to be around.  She is pleasant and kind and it is impossible to discern the barest trace of guile or deceitfulness. There is nothing about her life, before, or after the offense, that suggests that she is motivated by greed. A desire to be independent, certainly, but not greed.   But there is also a palpable lack of sophistication, a feature that is probably rooted in a lack of education and, perhaps, less than average intelligence.

Shaleza's recollections of how she came to be involved provide a measure of insight into the woman who will soon stand before you in judgment.  She recalls that the timeshare "resell" business was 'everywhere' in Florida and "noone seemed to be getting in trouble."  She also explained that while she "knew it was not right," she believed Mr. Hurtado's claim that "the only concern they had was with the Florida Department of Agriculture."  She has told me that when she heard the FBI was involved, she was "shocked" and "could not understand why."

Given the nature of the company and its fraudulent business plan, these comments by Ms. Aziz are either out of sync or tell us something meaningful about the manner in which she perceives -or fails to perceive- the world around her.  Overall, there is clearly a lack of sophistication and depth of understanding.

Whatever her level of appreciation at the time, Ms. Aziz wasted no time informing me that she was guilty of the crime for which she had been accused and requested that I pursue a defense strategy that highlighted her willingness to accept responsibility at the earliest opportunity.   To that end, we immediately requested a meeting with the government and the case agents.  In two proffers, Ms. Aziz provided the details of her own

involvement in a complete and truthful fashion and outlined her understanding of nature and extent of the scheme, including the roles played by others. Although Ms. Aziz was not given the opportunity to plead guilty under a cooperation agreement, I believe the Government will acknowledge her immediate willingness to assist in bringing this case to a fair and expeditious conclusion.

## SELF SURRENDER/DESIGNATION

Ms. Aziz has been compliant with the terms of her release and has adjusted well to the requirements of pre-trial supervision. She remains at liberty on a bond secured by her parents home in Schenectady. For these reasons, I respectfully request that she be permitted to self-surrender.

To the extent that this Court is inclined to recommend to the Bureau of Prisons that a correctional facility be designated, Ms. Aziz would prefer to be located in Danbury.

## TESTIMONIALS

I have taken the liberty of enclosing letters from Shaleza's mother and sister. They speak of a sweet, warm and kind person who is devastated by what she has done to her life. I respectfully request that Your Honor give them the weight they deserve in your formulation of a fair sentence.

## CONCLUSION

For the foregoing reasons, it is respectfully requested that this Court exercise leniency on behalf of Shaleza Aziz.

Respectfully submitted,

JOHN F. CARMAN
(JC 7149)
666 Old Country Road, Ste. 501
Garden City, NY 11530
(516)-683-3600


cc:    AUSA Jessica Lonergan ( Via ECF)
       USPO Emily Frankelis ( Via ECF )